ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
CHARLES J. SAROSY
Deputy Attorney General
State Bar No. 302439
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6356
  Fax:  (916) 731-2119
  E-mail:  Charles.Sarosy@doj.ca.gov
*Attorneys for Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and 22nd District Agricultural Association*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,**<br><br>                              Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity, et al.,**<br><br>                              Defendants. | 3:21-cv-01718 AJB-KSC<br><br>**REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br>Date:          May 19, 2022<br>Time:         2:00 p.m.<br>Dept:          4A<br>Judge:        The Honorable Anthony J. Battaglia<br>Trial Date: TBD<br>Case Filed: 10/4/2021 |

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Contradict Supreme Court Caselaw in Trying to Overcome Governor Newsom's Legislative Immunity ....................... 1

II. Plaintiffs Fail to Substantiate any Exception to Sovereign Immunity for Governor Newsom and Secretary Ross ........................ 2

III. The Lack of a Clearly Established Right Undercuts Plaintiffs' Qualified Immunity and § 1983 Damages Arguments ........................ 3

IV. AB 893 Does Not Trigger the First Amendment and, Alternatively, Would Pass Any Applicable Scrutiny Review .............. 5

    A. Plaintiffs Neglect Their Burden to Show AB 893 Impacts Speech ............................................................................................. 5

    B. AB 893 Passes Multiple Levels of Scrutiny ............................. 7

V. Plaintiffs Are Not a Suspect Class or Class of One ........................... 9

VI. Plaintiffs Concede the State-Law Tort Claims Are Limited to the District, But the District is Also Entitled to Dismissal ...................... 10

VII. Conclusion ........................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bauer v. Becerra*
   858 F.3d 1216 (9th Cir. 2017) ......................................................................... 8

*Bd. of Trs. of State Univ. of N.Y. v. Fox*
   492 U.S. 469 (1989) ......................................................................................... 7

*Bogan v. Scott-Harris*
   523 U.S. 44 (1998) ........................................................................................... 2

*Camreta v. Greene*
   563 U.S. 692 (2011) ......................................................................................... 3

*Clark v. Cmty. for Creative Non-Violence*
   468 U.S. 288 (1984) ......................................................................................... 6

*Evans v. Skolnik*
   997 F.3d 1060 (9th Cir. 2021) ...................................................................... 3, 5

*Grunert v. Campbell*
   248 F. App'x 775 (9th Cir. 2007) ..................................................................... 5

*Hafer v. Melo*
   502 U.S. 21 (1991) ........................................................................................... 5

*Hamby v. Hammond*
   821 F.3d 1085 (9th Cir. 2016) ......................................................................... 4

*Hunt v. City of Los Angeles*
   638 F.3d 703 (9th Cir. 2011) ........................................................................... 7

*ITSI T.V. Prod., Inc. v. Agric. Ass'ns*
   3 F.3d 1289 (9th Cir. 1993) ............................................................................. 2

*Kisela v. Hughes*
   138 S.Ct. 1148 (2018) ...................................................................................... 5

*L.A. County Bar Ass'n v. Eu*
   979 F.2d 697 (9th Cir. 1992) ........................................................................... 3

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mai v. United States*
    952 F.3d 1106 (9th Cir. 2020) ........................................................................ 8

*Miklosy v. Regents of Univ. of Cal.*
    44 Cal.4th 876 (2008) ................................................................................... 10

*Nichols v. Brown*
    859 F. Supp. 2d 1118 (C.D. Cal. 2012) ........................................................... 2

*Nordyke v. King*
    319 F.3d 1185 (9th Cir. 2003) .................................................................... 6, 7

*Nordyke v. King*
    644 F.3d 776 (9th Cir. 2011) .................................................................. 6, 8, 9

*Nordyke v. King*
    681 F.3d 1041 (9th Cir. 2012) .................................................................... 6, 9

*Nordyke v. Santa Clara Cnty.*
    110 F.3d 707 (9th Cir. 1997) ............................................................ 4, 6, 7, 8

*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018) ......................................................................... 8

*Searcy v. Hemet Unified Sch. Dist.*
    177 Cal.App.3d 792 (1986) .......................................................................... 10

*Toranto v. Jaffurs*
    297 F. Supp. 3d 1073 (S.D. Cal. 2018) ........................................................... 9

*Torres Rivera v. Calderon Serra*
    412 F.3d 205 (1st Cir. 2005) .......................................................................... 2

*United States v. Windsor*
    570 U.S. 744 (2013) ....................................................................................... 9

*White v. Pauly*
    137 S.Ct. 548 (2017) ...................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

42 U.S.C. § 1983 .................................................................................................... 3, 5

California Food & Agriculture Code § 4158(a) .......................................................... 6

California Government Claims Act ......................................................................... 10

California Government Code
   § 810.6 .................................................................................................................. 10
   § 815(a) ................................................................................................................. 10
   § 815.6 .................................................................................................................. 10

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................................. *passim*

Eleventh Amendment ................................................................................................ 2

The State Defendants' Motion to Dismiss explains why legislative, sovereign, and qualified immunity bar Plaintiffs' claims against Governor Newsom, Attorney General Bonta, and/or Secretary Ross. Plaintiffs respond by either disagreeing with or simply ignoring the governing caselaw as to each form of immunity. The official defendants should be dismissed on immunity grounds alone.

On the merits, Plaintiffs' argument is built on the assertion that AB 893 regulates speech. But that premise is wrong, and Plaintiffs' argument collapses as a result. As Plaintiffs ultimately concede, AB 893 explicitly prohibits only the sale of firearms and ammunition. Opp. 4, 20. Unlike the prior policy governing the Del Mar Fairgrounds, AB 893 does not prohibit gun shows. Nor does it impact whether Plaintiffs or their customers may gather at events to express their message that "guns are really good." Opp. 5. Nor does it prevent over 60 percent of vendors from continuing to operate at gun shows. Rather, as AB 893's plain language makes clear, the law is targeted to prevent illicit firearm and ammunition sales that still occur at gun shows despite the various laws governing them. And as the Ninth Circuit has held, prohibiting firearm sales is not a restriction on speech at all. Plaintiffs' First Amendment and equal protection claims fail under well-established precedents, and they admit most of their state-law tort claims fail. The Court should therefore dismiss all claims without leave to amend.

I. **PLAINTIFFS CONTRADICT SUPREME COURT CASELAW IN TRYING TO OVERCOME GOVERNOR NEWSOM'S LEGISLATIVE IMMUNITY**

In response to Governor Newsom's legislative immunity defense, Plaintiffs assert, without supporting authority, that legislative immunity should not apply in a "context where an executive officer signs legislation into law" because recognizing such immunity "does not make sense" and is "unseemly." Opp. 16. But Plaintiffs' view of what the law *ought* to be is inconsistent with what the Supreme Court and Ninth Circuit have said that the law *is*. The Supreme Court has long held that an executive official, such as a governor or mayor, is entitled to legislative immunity

1

for signing legislation into law. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (citing *Smiley v. Holm*, 285 U.S. 355, 372-373 (1932); *see Jones v. Allison*, 9 F.4th 1136, 1139-1140 (9th Cir. 2021)). Applying that rule, courts have recognized that the Governor of California has legislative immunity when signing a bill into law. *See, e.g.*, *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1132 (C.D. Cal. 2012); *see also Torres Rivera v. Calderon Serra*, 412 F.3d 205, 213 (1st Cir. 2005). Ignoring this, Plaintiffs instead note the Governor appoints the board of the 22nd District Agricultural Association ("District"). Opp. 16. They fail to, and cannot, explain the relevance of the Governor's appointment power to his legislative immunity.

## II. PLAINTIFFS FAIL TO SUBSTANTIATE ANY EXCEPTION TO SOVEREIGN IMMUNITY FOR GOVERNOR NEWSOM AND SECRETARY ROSS

Plaintiffs' arguments against sovereign immunity fare no better. First, Plaintiffs assert that *Ex parte Young* does not apply because the District is not a state actor and "its officials" are thus not entitled to Eleventh Amendment immunity. Opp. 17. Plaintiffs are correct that the District itself is not entitled to sovereign immunity under current Ninth Circuit case law—and that is why the State Defendants' Motion does not assert sovereign immunity as to the District. *ITSI T.V. Prod., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1292-1294 (9th Cir. 1993). But Governor Newsom and Secretary Ross are not officials of the District, and no authority supports Plaintiffs' contention that the District's lack of sovereign immunity extends *up* the chain of authority to Governor Newsom and Secretary Ross in their official capacities. On the contrary, Judge Bencivengo's prior ruling recognizes that state officials without any enforcement role *do* have sovereign immunity in precisely these circumstances. *See* Mot. 9.

Plaintiffs nevertheless contend that the *Ex parte Young* exception applies to Governor Newsom because he appoints the District's board of directors. Opp. 17-18. But the *Ex parte Young* exception is limited to those officials who directly enforce a law, not those who have only "a generalized duty to enforce state law or

2
REPLY BRIEF ISO MOTION TO DISMISS THE COMPLAINT (3:21-cv-01718-AJB-KSC)

general supervisory power over the persons responsible for enforcing the challenged provision." *L.A. County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *see* Mot. 8-9. And the power to appoint or remove is a supervisory power, not a direct enforcement power.

As for Secretary Ross, Plaintiffs note the CDFA provides legal counsel and a legislative coordinator for all district agricultural associations, and they point to letters concerning a different district agricultural association and a different fairgrounds. Opp. 18. But again, none of this goes to whether Secretary Ross is responsible for the direct enforcement of AB 893. On the contrary, these alleged facts just tend to confirm Judge Bencivengo's conclusion that Secretary Ross's "alleged wrongdoing amounts to supervision over the District," thus entitling her to sovereign immunity. Compl., Exh. 4 at 16-17.[1]

### III. THE LACK OF A CLEARLY ESTABLISHED RIGHT UNDERCUTS PLAINTIFFS' QUALIFIED IMMUNITY AND § 1983 DAMAGES ARGUMENTS

Plaintiffs contend that Governor Newsom, Attorney General Bonta, and Secretary Ross are not entitled to qualified immunity and are liable for damages under § 1983—as well as punitive damages—because AB 893 "plainly violates clearly established constitutional rights." Opp. 19. Plaintiffs are incorrect.

They first point to Judge Bencivengo's June 2019 preliminary injunction order. Opp. 19-20. But "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). And so only opinions by the Supreme Court or Ninth Circuit, not one or multiple district court decisions, count as binding "clearly established" law for qualified immunity purposes. *Evans v. Skolnik*, 997 F.3d 1060,

---

[1] Plaintiffs also theorize that Secretary Ross determines whether the District can approve a contract for a gun show because the CDFA must approve "revenue-generating contracts involving hazardous activities." Opp. 19, citing Cal. Food & Agric. Code § 3965.1. But it is up to the CDFA to determine what constitutes a hazardous activity, and Plaintiffs point to nothing showing CDFA has concluded that a gun show where no firearms or ammunition are sold is a hazardous activity.

1066-1067 (9th Cir. 2021); *see also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016). Plaintiffs cite no case stating otherwise. Indeed, Judge Bencivengo's order itself concluded there was no clearly established law on "propos[ing] or vot[ing] for a rule banning gun shows from a public fairground," thus entitling two District board members to qualified immunity. Compl., Exh. 4 at 15. In any event, even if a district court order could be clearly established law, that order involved a moratorium on gun shows at the Fairgrounds and is thus "not particularized to the facts of the case" here (*White v. Pauly*, 137 S.Ct. 548, 552 (2017)), which involves a statute prohibiting only the sale of firearms and ammunition. Plaintiffs admit that AB 893 does not expressly prohibit gun shows at the Fairgrounds. Opp. 4, 20. Moreover, the very nature of a preliminary injunction means the order concluded there was merely a "likelihood of success," but not guaranteed success, on the First Amendment and equal protection claims. Compl., Exh. 4 at 19, 25-26.

Plaintiffs next highlight *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997) ("*Nordyke 1997*"), and mistakenly assert that its circumstances are identical to those here. Opp. 8, 20. The Ninth Circuit held there that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment," and that an offer to sell a firearm is commercial speech. *Id.* But AB 893 does not explicitly apply to offers for sale, unlike the contract provision at issue in *Nordyke 1997*. Also, as the Ninth Circuit stressed, "critical" to its analysis was the fact that *Nordyke 1997* involved a *contractual* prohibition, and that no *law* (like a county ordinance) had been "enacted . . . to prohibit such sales." *Id.* at 710-711. It was only because the regulated conduct had *not* been rendered unlawful by a law like AB 893 that *Nordyke 1997* found the commercial speech to be "protected." *Id.* Because of these differences, *Nordyke 1997* did not place "beyond debate" the questions raised by Plaintiffs' constitutional claims such that it defeats qualified immunity. *White*, 137 S.Ct. at 551. Indeed, *Nordyke 1997* instead demonstrates why Plaintiffs' claims are actually wrong on the merits. Mot. 17-18.

Plaintiffs lastly rely on general precedent regarding commercial speech, assembly rights, and equal protection rights. Opp. 20-21. But courts cannot extract clearly established law from the broad history and purpose of a constitutional amendment (*Evans*, 997 F.3d at 1067), or from the general rules outlined in prominent cases regarding the same amendment (*Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018)). Such generality is exactly what the Supreme Court has repeatedly warned against because it fails to give officials "fair and clear warning." *Id.*

Without a clearly established right, Plaintiffs cannot avoid qualified immunity or the preclusion of damages claims under § 1983. For the first time and without alleging as much in the Complaint, Plaintiffs assert they will seek punitive damages against Governor Newsom, Attorney General Bonta, and Secretary Ross. Opp. 22. In doing so, Plaintiffs attempt to rewrite their Complaint and surmise what discovery might show (Opp. 22); these are efforts this Court should reject as impermissible and irrelevant at this stage. Plaintiffs acknowledge, by relying on *Hafer v. Melo*, 502 U.S. 21, 26-27 (1991), that the official-capacity damages claims are precluded. Opp. 22. As to the individual-capacity damages claims, they do not address why such claims are not "mere pleading device[s]" for the official-capacity claims. *Id.*; *Grunert v. Campbell*, 248 F. App'x 775, 778 (9th Cir. 2007). They cite no alleged individual action by Attorney General Bonta. The alleged individual action by Governor Newsom occurred *before* he became governor. Opp. 23. And, Secretary Ross's alleged action concerned letters regarding the *Ventura County* fairgrounds, not AB 893. Opp. 23. The damages claims are precluded entirely.

## IV. AB 893 DOES NOT TRIGGER THE FIRST AMENDMENT AND, ALTERNATIVELY, WOULD PASS ANY APPLICABLE SCRUTINY REVIEW

### A. Plaintiffs Neglect Their Burden to Show AB 893 Impacts Speech

Plaintiffs' arguments about their First Amendment claims put the cart before the horse. They start from the assumption that AB 893 is a content-based restriction on speech and emphasize the heightened scrutiny that must be applied.

5

Opp. 8, 10. But they fail to first meet their burden of showing that AB 893 regulates speech at all. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Plaintiffs admit that AB 893 "does not expressly ban gun shows from" the Fairgrounds. Opp. 20, *see also* Opp. 4. The plain language of AB 893 merely prohibits the sale of firearms and ammunition at the Fairgrounds. Cal. Food & Agric. Code § 4158(a). And, the Ninth Circuit has long held that the sale of a firearm is *not* speech under the First Amendment. *Nordyke 1997*, 110 F.3d at 710; *see also Nordyke v. King*, 319 F.3d 1185, 1191 (9th Cir. 2003) ("*Nordyke 2003*"). If AB 893 prohibits only sales, and sales do not constitute speech, then AB 893 does not regulate speech. Plaintiffs fail to address this major hurdle.

Instead, Plaintiffs baselessly assert that AB 893 "directly bans . . . otherwise lawful speech related to the sale of legal firearms and ammunition." Opp. 6. But, as the State Defendants' Motion demonstrates (Mot. 11-14), AB 893 does not prohibit the expressive activities that Plaintiffs describe typically occur at gun shows (Opp. 1, 5, 9), nor does AB 893 prohibit the transactions handled by more than 60 percent of the vendors at B&L gun shows. Compl. ¶ 57. The only case Plaintiffs cite to support their argument that AB 893 regulates speech is *Nordyke 1997*, but they misread its facts and its holdings. Opp. 6, 8-9. As explained *ante*, in Section III (*see also* Mot. 17-18), *Nordyke 1997* involved no "enacted" law, unlike AB 893, and it involved a contract provision that explicitly prohibited offers to sell a firearm, whereas AB 893 has no such explicit prohibition. 110 F.3d at 710. Plaintiffs insist that AB 893 does apply to offers for sale (Opp. 1, 6), but they point to no language in AB 893 providing as much.[2]

Plaintiffs also contend that the sale of firearms and ammunition at gun shows is "inextricably intertwined" with the expressive activities that occur at gun shows.

---

[2] Plaintiffs also misread the holding in *Nordyke v. King*, 681 F.3d 1041, 1043 n. 2 (9th Cir. 2012) ("*Nordyke 2012*"). Opp. 8-9. *Nordyke 2012* endorsed the First Amendment analysis in *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) ("*Nordyke 2011*"), which held that a county prohibition on the possession of firearms and ammunition on county property was constitutional.

Opp. 9.  Under this theory, when commercial speech is inextricably intertwined with non-commercial speech, the entirety of the speech is entitled to non-commercial speech protections.  *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989); *Hunt v. City of Los Angeles*, 638 F.3d 703, 715-716 (9th Cir. 2011).  This theory is inapplicable here in multiple respects.  First, as stated previously, the sale of a firearm or ammunition is not even commercial speech; it is not speech at all.  *Nordyke 1997*, 110 F.3d at 710.  Also, "a gun itself is not speech," nor is the possession of a gun.  *Nordyke 2003*, 319 F.3d at 1189.  There is thus no commercial speech for the non-commercial speech to intertwine with.

This intertwined theory also does not apply when "the two components of speech can be easily separated."  *Hunt*, 638 F.3d at 715.  The only nexus between firearm sales and non-commercial speech regarding firearms noted by Plaintiffs is the alleged profitability of gun shows when such sales take place there.  Compl. ¶ 59.  But profitability is not a "meaningful nexus" supporting a determination that firearm sales and non-commercial speech are inextricably intertwined.  *Hunt*, 638 F.3d at 716.  Courts have repeatedly rejected the argument that the *sale* of a regulated item is inextricably intertwined with *speech pertaining to* that item, and this Court should follow that rule here.  *Id.* at 716-717 (the plaintiffs' sale of shea butter and incense was not inextricably intertwined with the spiritual messages they incorporated into their sales pitches); *see also Fox*, 492 U.S. at 474 (prohibiting the sale of housewares in a college dorm did not "prevent[] the speaker from conveying, or the audience from hearing" non-commercial speech about home economics).  Nor is it "impossible" (*id.*) for Plaintiffs to express their view that "guns really are good" (Opp. 5) without firearm sales also occurring at gun shows; they may gather and express that view without implicating anything in AB 893.

### B. AB 893 Passes Multiple Levels of Scrutiny

Because AB 893 does not regulate speech, it is subject to rational basis review.  Mot. 14.  It easily satisfies such review.  Mot. 14-15.  In the alternative,

AB 893 also satisfies the other possibly applicable review standards, including: (1) the reasonableness standard for a type of nonpublic forum called a limited public forum (Mot. 15-17)[3]; (2) the test for commercial speech regulations (Mot. 17-18); and (3) intermediate scrutiny (Mot. 18-21).

Plaintiffs contend that AB 893 fails all these levels of scrutiny because, in part, the "State has no sufficient interest" in prohibiting firearm and ammunition sales at the Fairgrounds. Opp. 12. In criticizing AB 893's clear public safety interest, Plaintiffs demand support such as peer reviewed studies, evidence of dangerous incidents at B&L gun shows at the Fairgrounds, and a comparison of crimes at gun shows to those at other Fairgrounds events. Opp. 6, 13-14. But this imposes a standard not required by the Ninth Circuit. For example, when applying intermediate scrutiny, courts "do not impose an 'unnecessarily rigid burden of proof,'" and must remember they are "weighing a legislative judgment, not evidence in a criminal trial." *Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018) (citing First and Second Amendment caselaw). Courts also "do not require 'scientific precision'" (*Mai v. United States*, 952 F.3d 1106, 1118 (9th Cir. 2020)), and must accord substantial deference to the Legislature's judgment in the face of policy disagreements and conflicting evidence. *Pena*, 898 F.3d at 979-980. And, there need not be a showing that B&L itself contributed to the problem motivating AB 893. *Nordyke 2011*, 644 F.3d at 793. Plaintiffs' arguments are untenable under these authorities as they improperly seek to replace the Legislature's policy judgment with their own. The Ninth Circuit has long held there is a substantial government interest in preventing gun violence resulting from illicit firearm and ammunition transactions—the same interest motivating AB 893. *Nordyke 1997*, 110 F.3d at 713; *see also Bauer v. Becerra*, 858 F.3d 1216, 1223 (9th Cir. 2017). Plaintiffs point to statements by Governor Newsom before he was governor and by

---

[3] Plaintiffs wrongly assert that Judge Bencivengo held the Fairgrounds is a public forum. Opp. 7, n.8. Judge Bencivengo did not rule on this issue because the conclusion was the same "[r]egardless of the type of forum." Compl., Exh. 4 at 22.

AB 893's author to argue this interest is a pretext (Opp. 15), but this ignores Ninth Circuit authority that such statements are irrelevant to the analysis. Mot. 19.

Plaintiffs further assert that AB 893's sales prohibition is too broad to serve the public safety interest. Opp. 15. But, as Plaintiffs allege, California has a "rigorous regulatory regime" for firearm and ammunition sales (Compl. ¶ 30), and yet, illicit transactions still occur at gun shows. *Id.*, Exh. 6 at 54. This suggests that stricter laws are not possible and would not solve the problem. The Ninth Circuit has held that prohibiting firearm possession on county land was a "straightforward response" to the risk of gun violence. *Nordyke 2011*, 644 F.3d at 794. The same is true for prohibiting firearm and ammunition sales on public land in AB 893. Dismissal of the First Amendment claims is warranted.[4]

## V. PLAINTIFFS ARE NOT A SUSPECT CLASS OR CLASS OF ONE

Without citing any supporting caselaw or responding to the State Defendants' arguments (Mot. 22-23), Plaintiffs assert their equal protection claim is entitled to heightened scrutiny because "gun culture" members are a suspect class. Opp. 11-12. If true, then any interest group would constitute a suspect class. Such an unsustainable rule would nearly always trigger heightened scrutiny. AB 893, like the county ordinance prohibiting the possession of firearms or ammunition on county property upheld by the Ninth Circuit, "does not classify shows or events on the basis of a suspect class." *Nordyke 2012*, 681 F.3d at 1043 n. 2. Since Plaintiffs are also not a class of one, rational basis applies and is satisfied here. Mot. 22-23.[5]

---

[4] Plaintiffs cursorily mention their association and prior restraint claims, but in no way respond to the State Defendants' arguments regarding them. *Compare* Opp. 7, 10, n.10 *with* Mot. 21, 22, n.6. They have thus abandoned these claims and they should be dismissed. *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1104 (S.D. Cal. 2018) (dismissing claim as abandoned where plaintiff did not address the claim when opposing a motion).

[5] Although the term "animus" is used liberally in the Opposition brief and more often than done so in the Complaint (*compare* Opp. 1, 5, 10, 13, 15, 21 *with* Compl. ¶¶ 122, 215), Plaintiffs fail to point to anything in AB 893 demonstrating a "bare . . . desire to harm a politically unpopular group" or "discriminations of an unusual character." *United States v. Windsor*, 570 U.S. 744, 770 (2013).

## VI. PLAINTIFFS CONCEDE THE STATE-LAW TORT CLAIMS ARE LIMITED TO THE DISTRICT, BUT THE DISTRICT IS ALSO ENTITLED TO DISMISSAL

At the outset, Plaintiffs concede their state-law tort claims can only survive against the District. Opp. 24, n.11. But they fail to persuasively explain why this Court should exercise its supplemental jurisdiction over such claims or why they are not precluded by California's Government Claims Act ("GCA"). Mot. 23-25.

First, Plaintiffs assert they alleged a statutory basis for their state-law tort claims because the Complaint identifies the GCA. Opp. 23. This contention turns the GCA on its head. Under the GCA, a public entity is immune from state-law claims "[e]xcept as otherwise provided by statute" (Cal. Gov't Code § 815(a)), or when the entity "is under a mandatory duty imposed by an enactment." *Id.* § 815.6; *id.* § 810.6. There thus must be a statute or enactment, *other than* the GCA, that authorizes the lawsuit. *Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 899 (2008); *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal.App.3d 792, 802 (1986).

Plaintiffs argue they timely presented their tort claims since they accrue each time the District declines to contract for a gun show under AB 893 (Opp. 24), but this is meritless without an allegation identifying specific dates when such denials occurred. Compl. ¶¶ 131-137. Although Plaintiffs also highlight AB 893's operative date, they facially challenge the *adoption* of AB 893 on October 11, 2019, and their claims were presented more than the one year after that date.[6] Mot. 25.

## VII. CONCLUSION

The Complaint should be dismissed without leave to amend.

---

[6] Plaintiffs' concession in footnote 11 confirms the adoption of AB 893 is gravamen of their tort claims. Opp. 24. They also baselessly accuse Governor Newsom and Secretary Ross of a conspiracy without raising such a claim.

| | | |
|---|---|---|
| 1 | Dated: March 17, 2022 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | ANTHONY R. HAKL<br>Supervising Deputy Attorney General |
| 4 | | |
| 5 | | |
| 6 | | */s/Charles J. Sarosy* |
| 7 | | CHARLES J. SAROSY<br>Deputy Attorney General |
| 8 | | *Attorneys for Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and 22nd District Agricultural Association* |
| 9 | | |
| 10 | | |
| 11 | SA2021305596<br>64973244.docx | |

11