UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity, et al.,<br><br>Defendants. | Case No.: 21-cv-01718-AJB-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**(Doc. Nos. 17, 20)** |

Presently pending before the Court are motions to dismiss, filed by Defendants Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and the 22nd District Agricultural Association (collectively, "State Defendants"), (Doc. No. 17), and Defendants District Attorney of San Diego County, Summer Stephan, and County Counsel of San Diego County, Lonnie Eldridge[1] (collectively, "County Defendants"), (Doc. No. 20). The motions are fully briefed, (Doc. Nos. 28, 29, 30, & 33), and the matter is suitable for determination on the papers. For the reasons stated herein, the Court **GRANTS** the motions to dismiss Plaintiffs' Complaint.

---

[1] County Counsel Lonnie Eldridge was substituted as a defendant in place of former County Counsel Thomas Montgomery. (*See* Doc. No. 10.)

1

## I. BACKGROUND[2]

Plaintiff B&L Productions, Inc., d/b/a Crossroads of the West, operates gun show events in California, including at the Del Mar Fairgrounds (the "Fairgrounds"). (Complaint ("Compl."), Doc. No. 1, ¶¶ 1, 11.) Plaintiffs California Rifle & Pistol Association, Inc.; South Bay Rod and Gun Club, Inc.; Second Amendment Foundation, Inc.; Barry Bardack; Ronald J. Diaz, Sr.; John Dupree; Christopher Irick; Lawrence Michael Walsh; Robert Solis; Captain Jon's Lockers, LLC; and L.A.X. Firing Range, d/b/a LAX Ammo, attend and participate in the Crossroads gun show at the Fairgrounds. (*Id.* ¶ 3.)

According to the Complaint, individuals attending and participating in these gun shows engage in First Amendment activities (*id.* ¶ 3), and these gun shows "just happen to include the exchange of products and ideas, knowledge, services, education, entertainment, and recreation related to the lawful use of firearms[,]" (*id.* ¶ 50).

The Fairgrounds is owned by the State of California and managed by the board of directors of Defendant 22nd District Agricultural Association (the "District"). (*Id.* ¶¶ 27, 61.) The Fairgrounds "is used by many different public groups and is a major event venue for large gatherings of people to engage in expressive activities, including concerts, festivals, and industry shows." (*Id.* ¶ 68.)

Defendant Gavin Newsom is the Governor of the State of California and is "vested with 'the supreme executive power' of the state and 'shall see that the law is faithfully executed.'" (*Id.* ¶ 23 (citing Cal. Const. art. 5, § 1).) According to the Complaint, Newsom urged the District to ban gun shows at the Fairgrounds in a letter dated April 23, 2018, citing his concerns that "[p]ermitting the sale of firearms and ammunition on state-owned property only perpetuates America's gun culture." (*Id.* ¶ 89 (alterations in

---

[2] The following allegations are taken from the Plaintiffs' Complaint and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

original).) Thereafter, Newsom signed Assembly Bill 893 ("AB 893") into law on October 11, 2019. (*Id.* ¶ 121.)

Defendant Karen Ross is the Secretary of the California Department of Food & Agriculture, the entity responsible for policy oversight of the Fairgrounds. (*Id.* ¶ 28.) According to the Complaint, she oversees the operation of the District and authorizes the other Defendants to "interpret, implement, and enforce state laws and policies as regards the Fairgrounds . . . ." (*Id.* ¶¶ 161, 174, 187.)

Defendant Robert Bonta is the Attorney General of the State of California and "has the duty to 'see that the laws of the State are uniformly and adequately enforced.'" (*Id.* ¶ 24 (citing Cal. Const. art. 5, § 1).) Bonta has "direct supervision over every district attorney" within California and "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor . . . ." (*Id.*)

County Defendants Summer Stephan and Lonnie Eldridge are "responsible for enforcing the law within the County of San Diego." (*Id.* ¶¶ 25, 26.) According to the Complaint, Summers and Eldridge "are the state and local actors responsible for ensuring that AB 893 is enforced and thus have the authority to prosecute violations of AB 893." (*Id.* ¶¶ 160, 173, 186.)

AB 893, which added Section 4158 to the California Food & Agriculture Code, bars "any officer, employee, operator, lessee, or licensee of the [District]" from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . . ." (*Id.* ¶ 103.) Violation of the law is a misdemeanor. (*Id.*)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim."

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### III. REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 states a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

State Defendants request judicial notice of several documents, including an order by the Southern District of California and several letters from the California Department of General Services' Government Claims. (Doc. No. 17-2 at 2–3.) Plaintiffs also request judicial notice of several exhibits, including reports by governmental departments or agencies, newspaper articles, and legislative official records. (Doc. No. 28-1 at 2–3.) Because the Court does not rely on these documents in deciding this motion, Defendants' and Plaintiffs' requests for judicial notice are **DENIED AS MOOT**.

///

///

## IV. DISCUSSION

### A. Absolute Legislative Immunity as to Governor Newsom

State Defendants first argue the § 1983 claims against Newsom must be dismissed because he has absolute legislative immunity. (Doc. No. 17-1 at 17–18.) Plaintiffs are suing Newsom in his official capacity for the injunctive and declaratory relief portions of this suit, and in his personal capacity for claims for damages.[3] (Compl. ¶ 23.)

Under the doctrine of legislative immunity, state legislators are entitled to absolute immunity from civil damages for their performance of lawmaking functions. *See Tenney v. Brandhove*, 341 U.S. 367, 376–77, 379 (1951) (finding state legislators were absolutely immune from damages when acting within the "sphere of legitimate legislative activity"); *see also Jones v. Allison*, 9 F.4th 1136, 1139–40 (9th Cir. 2021). Legislative immunity, however, is not limited to officials who are members of legislative bodies. *See Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." (citation omitted) (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978))). "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions . . . ." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). Thus, the Supreme Court has held that legislative immunity does not depend on the actor so much as the functional nature of the act itself. *See id.* at 54–55, ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" (quoting *Tenney*, 341 U.S. at 376)).

Here, State Defendants claim a governor is entitled to absolute legislative immunity for the act of signing a bill into law. (Doc. No. 17-1 at 16–17.) Plaintiffs sue Newsom in his official capacity because "he is vested with 'the supreme executive power' of the state and 'shall see that the law is faithfully executed.'" (Compl. ¶ 23.)

---

[3] Plaintiffs raise punitive damages for the first time in their Response in Opposition to Defendants' motions to dismiss. (Doc. No. 28 at 30.) However, because this prayer for relief is raised for the first time on reply, the Court declines to consider it.

This generalized enforcement power, however, is insufficient to establish the requisite connection between Newsom and Plaintiffs' alleged injury. *See Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) (suit challenging laws prohibiting the carrying or use of firearms in certain circumstances failed to establish "required nexus" between the governor and plaintiff's injury where complaint relied solely on governor's "general oversight of State laws"). A governor is entitled to absolute immunity for the act of signing a bill into law. *See Torres-Rivera v. Calderon-Serra*, 412 F.3d 205, 213 (1st Cir. 2005) ("[A] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act."); *Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law.") (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)).

Moreover, Newsom is entitled to immunity under the Eleventh Amendment. The Eleventh Amendment poses a general bar against federal lawsuits brought against a state. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). And, while it does not bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law, *Ex parte Young*, 209 U.S. 123, 155–56 (1908), the individual state official sued "must have some connection with the enforcement of the act," *id.* at 157, and that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit," *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Newsom, sued in his official capacity, has no alleged factual connection to the enforcement of AB 893, other than a general duty to enforce California law as the governor. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor entitled to Eleventh Amendment immunity where his only connection to challenged California statute was a general duty to enforce California law).

Plaintiffs imply this legislative immunity may be abrogated if the enactment of the legislation was motivated by impermissible intent. (Compl. ¶¶ 89, 123.) However, that argument was expressly rejected by the Supreme Court in *Bogan*, which extended absolute legislative immunity from suit under § 1983 to local legislators for their legislative activities. *Bogan*, 523 U.S. at 54; *see Torres-Rivera*, 412 F.3d at 213. Moreover, Newsom's ability as the Governor of California to appoint members to the board of the District has no bearing on the matter. As such, the § 1983 claims against Newsom are **DISMISSED WITH PREJUDICE**.

### B.     Sovereign Immunity as to Governor Newsom and Secretary Ross

State Defendants next assert all claims against Newsom and Ross should be dismissed because they have sovereign immunity under the Eleventh Amendment to the Constitution. (Doc. No. 17-1 at 18.)

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It "enacts a sovereign immunity from suit." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). The Supreme Court has "extended a State's protection from suit to suits brought by the State's own citizens . . . . [and] suits invoking the federal-question jurisdiction of Article III courts may also be barred by the Amendment." *Id.* at 268. Thus, "Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Id.* at 270. Sovereign immunity is an affirmative defense, and therefore, "[l]ike any other such defense, . . . must be proved by the party that asserts it and would benefit from its acceptance." *ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993).

"Naming state officials as defendants rather than the state itself will not avoid the eleventh amendment when the state is the real party in interest. The state is the real party in interest when the judgment would tap the state's treasury or restrain or compel government action." *Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1033 (9th

Cir. 1985). Under the exception created by *Ex parte Young*, however, "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 U.S. at 155–56. Pursuant to this exception, "the eleventh amendment does not bar an injunctive action against a state official that is based on a theory that the officer acted unconstitutionally." *Almond Hill Sch.*, 768 F.2d at 1034. This exception does not allow suit against officers of the state simply "to enjoin the enforcement of an act alleged to be unconstitutional" unless the officer has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. Otherwise, the suit "is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party." *Id.*

Newsom and Ross do not have a connection with the enforcement of the AB 893. As to Newsom, Plaintiffs merely allege that Newsom must "see the law is faithfully executed," (Compl. ¶ 23), and that he is "ultimately responsible for enforcement of the law, (*id.* ¶ 122). However, Newsom lacks the "direct authority and practical ability to enforce the challenged statute" as required by *Ex parte Young*. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846–47 (9th Cir. 2002); *Ass'n des Eleveurs de Canards*, 729 F.3d at 943.

Similarly, the only allegations about Ross in the Complaint are that she is "responsible for the policy oversight of the . . . Del Mar Fairgrounds[,]" (Compl. ¶ 28), and "interpret[s], implement[s], and enforce[s] state laws and policies as regards the Fairgrounds, including AB 893[,]" (*id.* ¶ 161). Indeed, Ross' alleged wrongdoing amounts to supervision over the District, who is alleged to be "responsible for ensuring that all state laws governing gun shows at the Fairgrounds, including AB 893, are faithfully enforced." (*See id.* ¶ 27.) This "general supervisory power over the persons responsible for enforcing" AB 893 does not subject Ross to suit. *Eu*, 979 F.2d at 704.

Thus, barred by sovereign immunity, Plaintiffs' § 1983 and supplemental state law claims against Newsom and Ross in their official capacities are **DISMISSED WITH PREJUDICE**.

### C. Qualified Immunity as to Governor Newsom, Attorney General Bonta, and Secretary Ross

Next, the motion to dismiss argues that Newsom, Ross, and Bonta are entitled to qualified immunity as to Plaintiffs' federal claims. "Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law,'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and it assumes that government actors "do not knowingly violate the law," *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). Because "[i]t is 'an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Mueller*, 576 F.3d at 992 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To that end, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether Newsom, Ross, and Bonta are immune from suit, the Court must "evaluate two independent questions: (1) whether [their] conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro*, 833 F.3d at 1066. "[A] right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 1067 (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mueller*, 576 F.3d at 994 (internal quotation

marks and citation omitted). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The standard is an objective one that leaves 'ample room for mistaken judgments.'" *Mueller*, 576 F.3d at 992 (quoting *Malley*, 475 U.S. at 343).

Here, the Court need not resolve whether Newsom, Ross, and Bonta violated Plaintiffs' constitutional rights, because even assuming they did, those rights were not clearly established. Plaintiffs' constitutional rights "would be 'clearly established' if 'controlling authority or a robust consensus of cases of persuasive authority' had previously held that" it is a violation of the First Amendment right to free speech or Fourteenth Amendment right to equal protection to enforce a rule banning the sale of guns or ammunition from a public fairground. *Hines v. Youseff*, 914 F.3d 1218, 1229–30 (9th Cir. 2019) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018)). Plaintiffs point to no such precedent, and the Court has not located any on its own. The absence of such authority means the rights in question here were not clearly established when Newsom, Ross, and Bonta took actions related to AB 893. Accordingly, they are entitled to qualified immunity from Plaintiffs' claims for monetary damages.

**D. Individual Capacity Claims as to Governor Newsom, Attorney General Bonta, and Secretary Ross**

Next, state officials can be sued when acting in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). The distinction is "more than a mere pleading device." *Id.* at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72 (1989)). State officials are liable for "acts" taken under color of state law, but the Eleventh Amendment "prohibits damage actions against the 'official's office'—actions that are in reality suits against the state itself, rather than its individual officials." *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

Plaintiffs sue Newsom, Bonta, and Ross in their individual capacities, but they have alleged no facts that relate to individual capacity—that is, they have treated

individual capacity as a "mere pleading device." The heart of Plaintiffs' claims is the passage of AB 893, but this was done only in State Defendants' official capacities pursuant to state law. As such, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' claims for damages against Newsom, Bonta, and Ross in their individual capacities.

### E. County Counsel Eldridge

Plaintiffs further allege in their Complaint that County Counsel is the local actor "responsible for ensuring that AB 893 is enforced and thus ha[s] the authority to prosecute violations of AB 893." (Compl. ¶¶ 160, 173, 186.) Specifically, Plaintiffs contend AB 893 requires Defendant District Attorney Stephan to prosecute violations of AB 893, and that this statutory mandate to prosecute extends to Eldridge because he must "discharge all the duties vested in the district attorney." (*Id.* ¶ 26.) County Defendants assert in their motion to dismiss that Eldridge is not authorized or charged by California law with enforcing AB 893 or prosecuting violations of that statute. (Doc. No. 20-1 at 4.) Plaintiffs do not address or oppose County Defendants' arguments for County Counsel Eldridge. (*See* Doc. No. 28; *see also* Doc. No. 33 at 3.)

By failing to respond to the arguments raised by County Defendants on these claims, Plaintiffs failed to oppose the motion to dismiss these claims. Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate. *See, e.g.*, *Silva v. U.S. Bancorp*, No. 5:10-cv-1854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.") (citations omitted); *Qureshi v. Countrywide Home Loans, Inc.*, No. 09-4198, 2010 WL 841669, at *9 & n.2 (N.D. Cal. Mar. 10, 2010) (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)) (dismissing claims as abandoned where the plaintiff did not oppose dismissal); *In re TFT-LCD (Flat Pan el) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (dismissing a claim without leave to amend where the plaintiff did not address the defendant's arguments); s*ee also Walsh v.*

*Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir.2006) (where opposition to motion to dismiss failed to address arguments in motion to dismiss, the plaintiff failed to demonstrate a continuing interest in pursuing a claim for relief and it was "effectively abandoned" and could not be raised on appeal).

As such, the Court **DISMISSES** claims one through six as to Defendant Eldridge **WITHOUT PREJUDICE**.

However, the Court reminds Plaintiffs that because they failed to oppose County Defendants' arguments, despite having a clear opportunity to do so, Plaintiffs cannot simply re-allege the same claims in an amended complaint. Any amended complaint must address the arguments which County Defendants raised and which Plaintiffs have apparently conceded. Plaintiffs will not be permitted to raise arguments in defense of an amended complaint which Plaintiffs could have, but failed to, properly raise in defense of the original complaint.

### F.  First Amendment Claims

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Under the First Amendment, "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). "Content-based regulations 'target speech based on its communicative content.'" *Nat'l Inst. of Fam. & Life Advocs.*, 138 S. Ct. at 2371 (quoting *Reed*, 576 U.S. at 163).

Defendants contend AB 893 is not properly subject to First Amendment analysis because it does not abridge anyone's freedom of speech or expressive conduct. (Doc. No.

17-1 at 20–24.) Rather, they claim, AB 893 merely prohibits the sale of guns, and the sale of guns is not "speech" within the meaning of the First Amendment. The Court agrees.

"[T]he act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment." *Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997). Here, AB 893 covers no more than the simple exchange of money for a gun or ammunition, solely prohibiting "the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . . ." (Doc. No. 1 at 113.) In their opposition, Plaintiffs cite no authority for their proposition that barring sales infringes speech. *See Nordyke v. King* ("*Nordyke 2003*"), 319 F.3d 1185, 1191 (9th Cir. 2003). Rather, Plaintiffs merely assert that "by permanently banning the commercial sale of firearms and ammunition at the Fairgrounds, it has the effect of banning gun shows at the Fairgrounds." (Compl. ¶ 125; *see also* Doc. No. 28 at 28.) "As [the sale of guns] itself is not commercial speech and a ban on [sales] at most interferes with sales that are not commercial speech, . . . the [Defendants'] prohibition on [the sale of guns] does not infringe [Plaintiffs'] right to free commercial speech." *Nordyke 2003*, 319 F.3d at 1191.

As such, Plaintiffs' First Amendment claims are **DISMISSED WITH LEAVE TO AMEND**.

### G. Equal Protection Claim

Plaintiffs further raise equal protection claims on the theory that Defendants treated them differently than similarly situated persons by preventing Plaintiffs from "equally participating in the use of the publicly owned venue by unconstitutionally eliminating Plaintiffs' ability to freely conduct otherwise lawful business transactions and freely express their beliefs with like-minded people." (Compl. ¶ 217.) Plaintiffs assert their equal protection claim is "based on the State's denial of the exercise of [their First Amendment] rights in a public forum in a way that treats similarly situated persons differently." (Doc. No. 28 at 12.)

The equal protection claims rise and fall with the First Amendment claims. *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012). Plaintiffs do not allege

13

membership in a protected class or contend that Defendants' conduct burdened any fundamental right other than their speech rights. Therefore, Defendants' differential treatment of Plaintiffs will draw strict scrutiny (as opposed to rational basis review) under the Equal Protection Clause only if it impinged Plaintiffs' First Amendment rights. *See ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 797–98 (9th Cir. 2006); *Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir. 1987) (noting, with regard to "equal protection claims relating to expressive conduct," that "[o]nly when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged").

As explained above, the Complaint fails to allege that Defendants infringed Plaintiffs' speech rights by the passage of AB 893. Therefore, the Complaint also fails to state equal protection claims for differential treatment that trenched upon a fundamental right. *See OSU Student All.*, 699 F.3d at 1067. Thus, Plaintiffs' sixth claim under the Fourteenth Amendment's Equal Protection Clause is **DISMISSED WITH LEAVE TO AMEND**.

### H. The Court Lacks Jurisdiction Over the State Law Claims Against Defendants Newsom, Bonta, Ross, and the District

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States." *Id.* "Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Id.* Such jurisdiction arises under Title 28 U.S.C. § 1367(a).

///

The Supreme Court has characterized § 1367(a) as providing district courts "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp.*, 545 U.S. at 558. The Ninth Circuit has explained that the term "'[o]riginal jurisdiction' in subsection (a) refers to jurisdiction established by looking for any claim in the complaint over which there is subject matter jurisdiction." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001), *holding modified by Exxon Mobil Corp.*, 545 U.S. 546.

Here, Plaintiffs assert the Court maintains subject matter jurisdiction over this action because their federal law claims, brought under § 1983, raise a federal question. (Compl. ¶ 8.) Plaintiffs make no mention of supplemental jurisdiction over their state law claims. (*See generally id.*)

As detailed above, the Court dismissed all federal law claims against both State and County Defendants. The remaining claims against them rest on only California state law. (*Id.* ¶¶ 221–29 (intentional interference with prospective economic advantage); ¶¶ 230–39 (negligent interference with prospective economic advantage); ¶¶ 240–48 (intentional interference with contract).) Both State Defendants and County Defendants are California residents. (*Id.* ¶ 10.) Thus, the Court lacks any basis to assert subject matter jurisdiction over Plaintiffs' action as it pertains to them. Absent such basis, the Court may not exercise supplemental jurisdiction over the state law claims against them. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002). Accordingly, the Court **DISMISSES** all remaining state law claims against State Defendants and County Defendants **WITHOUT PREJUDICE**. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

///

///

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' motions to dismiss **WITH LEAVE TO AMEND**. (Doc. Nos. 17, 20.) Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein by **August 31, 2022**.

**IT IS SO ORDERED.**

Dated: August 18, 2022

Hon. Anthony J. Battaglia
United States District Judge