UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B&L PRODUCTIONS, INC., d/b/a CROSSROADS OF THE WEST, et al.,<br><br>                                              Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California and in his personal capacity, et al.,<br><br>                                              Defendants. | Case No.: 21-cv-01718-AJB-DDL<br><br>**AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Doc. Nos. 42)** |

Presently pending before the Court is a motion to dismiss, filed by Defendants Governor Gavin Newsom, Attorney General Rob Bonta, Secretary Karen Ross, and the 22nd District Agricultural Association (collectively, "State Defendants"). (Doc. No. 42.) Defendant Summer Stephan joins in the motion to dismiss and in the reply brief in support of motion to dismiss. (Doc. Nos. 43, 46.) The motion is fully briefed, (Doc. Nos. 44, 45), and the matter is suitable for determination on the papers. For the reasons stated herein, the Court **GRANTS** the motion to dismiss Plaintiffs' Complaint.

///
///
///

## I. BACKGROUND[1]

Plaintiff B&L Productions, Inc., d/b/a Crossroads of the West, operates gun show events in California, including at the Del Mar Fairgrounds (the "Fairgrounds"). (First Amended Complaint ("FAC"), Doc. No. 36, ¶ 1.) Plaintiffs California Rifle & Pistol Association, Inc.; South Bay Rod and Gun Club, Inc.; Second Amendment Foundation, Inc.; Barry Bardack; Ronald J. Diaz, Sr.; John Dupree; Christopher Irick; Lawrence Michael Walsh; Robert Solis; Captain Jon's Lockers, LLC; and L.A.X. Firing Range, d/b/a LAX Ammo (collectively, "Plaintiffs"), attend and participate in the Crossroads gun show at the Fairgrounds. (*Id.* ¶ 3.) Individuals attending and participating in these gun shows engage in First Amendment activities, (*id.* ¶ 3), and exchange information about gun-related activities (*id.* ¶ 4).

The Fairgrounds is owned by the State of California and managed by the board of directors of Defendant 22nd District Agricultural Association (the "District"). (*Id.* ¶ 27.) The Fairgrounds "is used by many different public groups and is a major event venue for large gatherings of people to engage in expressive activities, including concerts, festivals, and industry shows." (*Id.* ¶ 85.)

Defendant Gavin Newsom is the Governor of the State of California and is "vested with 'the supreme executive power' of the state and 'shall see that the law is faithfully executed.'" (*Id.* ¶ 24 (citing Cal. Const. art. 5, § 1).) According to the FAC, Newsom urged the District to ban gun shows at the Fairgrounds in a letter dated April 23, 2018, citing his concern that "[p]ermitting the sale of firearms and ammunition on state-owned property only perpetuates America's gun culture." (*Id.* ¶ 106.) Thereafter, Newsom signed Assembly Bill 893 ("AB 893") into law on October 11, 2019. (*Id.* ¶ 140.)

Defendant Karen Ross is the Secretary of the California Department of Food & Agriculture, the entity responsible for policy oversight of the Fairgrounds. (*Id.* ¶ 28.)

---

[1] The following allegations are taken from the Plaintiffs' Complaint and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

According to the FAC, she oversees the operation of the District and authorizes the other Defendants to "issue policy recommendations for district boards, including recommendations about bans on gun show events at state-owned fairground." (*Id.*)

Defendant Robert Bonta is the Attorney General of the State of California and "has the duty to 'see that the laws of the State are uniformly and adequately enforced.'" (*Id.* ¶ 25 (citing Cal. Const. art. 5, § 1).) Bonta has "direct supervision over every district attorney" within California and "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor . . . ." (*Id.*)

County Defendant Summer Stephan is "responsible for enforcing the law within the County of San Diego." (*Id.* ¶ 26.) According to the FAC, Stephan is "charged with prosecuting any violation of the California Food & Agricultural Code, including section 4158 (i.e., AB 893) within the county of San Diego." (*Id.*)

AB 893, which added Section 4158 to the California Food & Agriculture Code, bars "any officer, employee, operator, lessee, or licensee of the [District]" from "contract[ing] for, authoriz[ing], or allow[ing] the sale of any firearm or ammunition on the property or in the buildings that comprise the Del Mar Fairgrounds . . . ." (*Id.* ¶ 120.) Violation of the law is a misdemeanor. (*Id.*)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal

conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### III. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 states a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

State Defendants request judicial notice of multiple exhibits which include letters from the California Department of General Services' Government Claims Program. (Doc. No. 42-2 at 1–3.) Because the Court does not rely on these documents in deciding this motion, Defendants' request for judicial notice is **DENIED AS MOOT**.

### IV. DISCUSSION

    A.    **Individual Capacity Claims as to Governor Newsom, Attorney General Bonta, and Secretary Ross**

State officials can be sued when acting in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 23 (1991). The distinction is "more than a mere pleading device." *Id.* at 27 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72 (1989)). State officials are liable for "acts" taken under color of state law, but the Eleventh Amendment "prohibits damage actions against the 'official's office'—actions that are in reality suits against the state itself, rather than its individual officials." *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

///

Plaintiffs sue Newsom, Bonta, and Ross in their individual capacities and allege State Defendants (1) engaged in intentional and negligent interference with Plaintiffs' prospective economic advantage, and (2) engaged in intentional interference with Plaintiffs' ability to contract. (FAC ¶¶ 253–80.) However, Plaintiffs have again failed to allege facts that relate to individual capacity—that is, Plaintiffs treat individual capacity as a "mere pleading device." Plaintiffs allege the acts of State Defendants disrupted Plaintiffs' economic relationships but do not provide facts to show how these acts were committed outside of Defendants' official capacities. The heart of Plaintiffs' claims is the passage of AB 893—an act done only in State Defendants' official capacities pursuant to state law. As such, the Court **DISMISSES** Plaintiffs' claims for damages against Newsom, Bonta, and Ross in their individual capacities **WITHOUT LEAVE TO AMEND**.

### B.     First Amendment Claims

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Under the First Amendment, "a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). "Content-based regulations 'target speech based on its communicative content.'" *Nat'l Inst. of Fam. & Life Advocs.*, 138 S. Ct. at 2371 (quoting *Reed*, 576 U.S. at 163).

Plaintiffs contend AB 893 violates the First Amendment as an impermissible content-based restriction of speech and is an effort to indirectly ban gun shows altogether. (FAC ¶¶ 188, 192.) Additionally, Plaintiffs assert AB 893 is a restriction of commercial speech. (*Id.* ¶ 205.)

| | |
|---|---|
| 1 | Defendants contend AB 893 does not violate the First Amendment because its "plain |
| 2 | language and legislative findings show that it prohibits only non-speech conduct—the sale |
| 3 | of firearms and ammunition." (Doc. No. 42 at 8.) Defendants also highlight that AB 893 |
| 4 | does not prohibit "offers for sale." (*Id.*) Rather, they claim AB 893 merely prohibits the |
| 5 | sale of guns, and the sale of guns is not "speech" within the meaning of the First |
| 6 | Amendment. (*Id.*) The Court agrees. |
| 7 | As held by the Ninth Circuit, "the act of exchanging money for a gun is not 'speech' |
| 8 | within the meaning of the First Amendment." *Nordyke v. Santa Clara Cnty.* ("*Nordyke* |
| 9 | *1997*"), 110 F.3d 707, 710 (9th Cir. 1997). Here, AB 893 covers no more than the simple |
| 10 | exchange of money for a gun or ammunition, solely prohibiting "the sale of firearms and |
| 11 | ammunition at the Del Mar Fairgrounds . . . ." (FAC ¶ 154.) In their FAC, Plaintiffs |
| 12 | continue to fail to cite any authority for their proposition that barring sales infringes speech. |
| 13 | *See Nordyke v. King* ("*Nordyke 2003*"), 319 F.3d 1185, 1191 (9th Cir. 2003). Rather, |
| 14 | Plaintiffs merely assert, once again, that banning the commercial sale of firearms and |
| 15 | ammunition at the Fairgrounds "intentionally and effectively" bans gun shows altogether |
| 16 | and "sweeps up all forms of speech and expressive conduct" at a public venue. (FAC |
| 17 | ¶¶ 191–92.) Plaintiffs fail to point the Court to any facts that show how AB 893 |
| 18 | "intentionally and effectively" leads to the banning of gun shows altogether. "[M]ere |
| 19 | conclusory statements[] do not suffice" for a pleading. *Ashcroft*, 556 U.S. at 678. |
| 20 | Regarding Plaintiffs' claim that AB 893 restricts commercial speech, "[the sale of |
| 21 | guns] itself is not commercial speech and a ban on [sales] at most interferes with sales that |
| 22 | are not commercial speech, . . . the [Defendants'] prohibition on [the sale of guns] does not |
| 23 | infringe [Plaintiffs'] right to free commercial speech." *Nordyke 2003*, 319 F.3d at 1191. |
| 24 | Moreover, AB 893 does not prohibit *offers* for sale. *See Nordyke 1997*, 110 F.3d at 710 |
| 25 | (the act of exchanging money is not "speech" within the meaning of the First Amendment |
| 26 | while an offer to sell firearms is speech). At most, AB 893 restricts the exchanging of |
| 27 | money for guns or ammunition. It is well established that the exchanging of money "for a |
| 28 | gun is not 'speech' within the meaning of the First Amendment." *Id.* |

1  As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' First Amendment claims **WITHOUT LEAVE TO AMEND**.

### C. Second Amendment Claim

Plaintiffs, for the first time, raise a Second Amendment claim in their FAC. Let it be clear that when this Court grants a motion to dismiss with leave to amend, Plaintiffs are strictly limited to curing deficiencies where leave is granted. (*See* Doc. No. 35 at 16.) Leave to amend was granted for the following: (1) individual capacity claims as to Governor Newsom, Attorney General Bonta, and Secretary Ross; (2) the First Amendment claims; (3) the Equal Protection claim; and (4) the state law claims. (*Id.* at 11–15.) Plaintiffs violated Federal Rule of Civil Procedure 15 in asserting a new, independent claim in their FAC. Nevertheless, the Court will consider the Second Amendment claim in the spirit of judicial economy. However, Plaintiffs are put on notice that any future procedural violations may result in disciplinary sanctions.

Turning to the merits, Plaintiffs assert Defendants "cannot satisfy their burden to justify their ban on the sale of firearms and ammunition at the Fairgrounds under the history-and-tradition-based test applied in *Heller* and recently confirmed in *Bruen*." (FAC ¶ 57.) Specifically, Plaintiffs argue Defendants "cannot cite a relevant historical law forbidding commercial speech relating to firearms sales" and rely on questionable authority. (Doc. No. 44 at 19.)

The *Bruen* Court set forth a test which requires courts to assess whether "modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2131 (2022). The present standard as pronounced in *Bruen* is, as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30. While the Court did not provide an "exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," there are at least "two

metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. Applying that analysis here, the Court must first determine whether the limited prohibition of the sale of firearms and ammunition at a gun show is covered by the plain text of the Second Amendment. Assuming it is, *Bruen* demands there must be a historical analogue—a tradition of similar firearm regulation—that supports the practice.

The Court in *Bruen* acknowledged the legitimacy of gun regulations as recognized in *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) and in *McDonald v. Chicago*, 561 U.S. 742, 786 (2010). In his majority opinion in *Bruen*, Justice Thomas confirmed the Constitution permits state licensing regimes to require gun licensing and background checks as long as the requirements do not have the effect of preventing law-abiding citizens from exercising their Second Amendment rights. *Bruen*, 142 S. Ct. at 2138 n.9. In his concurring opinion, Justice Kavanaugh, joined by the Chief Justice, affirmed that, under *Heller*, "the Second Amendment allows a 'variety' of gun regulations," including such "presumptively lawful regulatory measures" as "requir[ing] a [gun] license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162. Thus, so long as the regulation of the right to keep and bear arms does not amount to a prohibition of that right, it is read that the regulation is permissible.

"As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)); *see Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("[T]he right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm, although that acquisition right is far from absolute . . . ."). However, in *Heller*, the Supreme Court included "laws imposing

conditions and qualifications on the commercial sale of arms" in a list of "presumptively lawful regulatory measures" consistent with the Second Amendment. 554 U.S. at 626–27; *see Teixeira*, 873 F.3d at 683 ("Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons."). The Court does not find this holding to be overruled by *Bruen*.

Here, Plaintiffs correctly reference the history and tradition test confirmed in *Bruen* but do not provide the necessary allegations to support a Second Amendment claim under this new framework. Rather, Plaintiffs make the conclusory statement they "have a right, under the Second Amendment, to buy and sell firearms and the ammunition necessary for the effective operation of those firearms." (FAC ¶ 240.) To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege in the complaint "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs have failed to state a claim that AB 893 impedes Plaintiffs from acquiring or purchasing firearms or ammunition altogether, amounting to a prohibition of that right. Indeed, Defendants correctly state that Plaintiffs "have not plausibly alleged that AB 893 impedes them from purchasing a firearm or ammunition at a place other than a gun show at the Fairgrounds." (Doc. No. 42-1 at 25.)

As such, Plaintiffs' Second Amendment claim is **DISMISSED WITH LEAVE TO AMEND**.

### D. Equal Protection Claim

Plaintiffs further raise equal protection claims on the theory that Defendants treat them differently than similarly situated persons. Plaintiffs contend that Defendants' "refusal to allow Plaintiffs equal use of the [Fairgrounds] . . . violates Plaintiffs' right to equal protection . . . because it is based on a 'bare desire to harm a politically unpopular group.'" (FAC ¶ 251.) Plaintiffs assert their equal protection claim is based on the State's "viewpoint-discriminatory and animus-based restriction of Plaintiffs' protected speech that serves no compelling governmental interest." (*Id.* ¶ 248.) Thus, Plaintiffs equal protection claim is predicated on their First Amendment claims.

///

A piece of legislation is presumed valid under the Equal Protection Clause "if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "[A] court may strike down [a] statute under the Equal Protection Clause if the statute serves no legitimate governmental purpose and if impermissible animus toward an unpopular group prompted the statute's enactment." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (citing *Mtn. Water Co. v. Mont. Dep't of Pub. Serv. Regul.*, 919 F.2d 593, 598 (9th Cir. 1990)).

Plaintiffs fail to allege any facts showing that impermissible animus and viewpoint discrimination prompted the enactment of AB 893. Rather, Plaintiffs again make a conclusory statement that AB 893 is "based on a 'bare desire to harm a politically unpopular group.'" Absent facts to show Defendants' impermissible animus, the Court will not accept any of Plaintiffs' conclusory statements.

Plaintiffs' equal protection claims also fall with the First Amendment claims. *OSU Student All. v. Ray*, 699 F.3d 1053, 1067 (9th Cir. 2012). Plaintiffs do not allege membership in a protected class or contend that Defendants' conduct burdened any fundamental right other than their right to free speech. Therefore, Defendants' differential treatment of Plaintiffs draws strict scrutiny (as opposed to rational basis review) under the Equal Protection Clause only if it impinges Plaintiffs' First Amendment rights. *See ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 797–98 (9th Cir. 2006); *Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir. 1987) (noting with regard to "equal protection claims relating to expressive conduct," that "[o]nly when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged").

As explained above, the FAC fails to allege that Defendants infringed Plaintiffs' right to free speech by the passage of AB 893. Therefore, the Complaint also fails to state equal protection claims for differential treatment that is entrenched upon a fundamental right. *See OSU Student All.*, 699 F.3d at 1067. Thus, the Court **GRANTS** Defendants'

motion to dismiss Plaintiffs' sixth claim under the Fourteenth Amendment's Equal Protection Clause **WITHOUT LEAVE TO AMEND**.

### D. The Court Lacks Jurisdiction Over the State Law Claims Against Defendants Newsom, Bonta, Ross, and the District

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States." *Id.* "Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Id.* Such jurisdiction arises under 28 U.S.C. § 1367(a).

The Supreme Court has characterized § 1367(a) as providing district courts "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp.*, 545 U.S. at 558. The Ninth Circuit has explained that the term "'[o]riginal jurisdiction' in subsection (a) refers to jurisdiction established by looking for any claim in the complaint over which there is subject matter jurisdiction." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001), *holding modified by Exxon Mobil Corp.*, 545 U.S. 546.

Plaintiffs assert this Court has supplemental jurisdiction over their state law claims "because those claims share common operative facts with Plaintiffs' federal law claims." (FAC ¶ 10.) As detailed above, the Court dismisses all federal law claims against both State and County Defendants. The remaining claims against Defendants rest on only California state law. (*Id.* ¶¶ 253–61 (intentional interference with prospective economic advantage); ¶¶ 262–71 (negligent interference with prospective economic advantage); ¶¶ 272–80

(intentional interference with contract).) Plaintiffs also lack diversity jurisdiction because Plaintiffs and State Defendants and County Defendants are all California residents. (*Id.* ¶¶ 24–28.) Thus, the Court lacks any basis to assert subject matter jurisdiction over Plaintiffs' action as it pertains to all Defendants. Absent such basis, the Court may not exercise supplemental jurisdiction over the state law claims against all Defendants. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002). Accordingly, the Court **DISMISSES** all remaining state law claims against all Defendants **WITH LEAVE TO AMEND**. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

## V.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss. (Doc. No. 42.) Should Plaintiffs choose to do so, where leave is granted, they must file an amended complaint curing the deficiencies noted herein no later than March 24, 2023. Defendants must file a responsive pleading no later than April 7, 2023.

**IT IS SO ORDERED.**

Dated: March 13, 2023

Hon. Anthony J. Battaglia
United States District Judge